UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JARED MICHAEL MAHLER,

                    Plaintiff,                        Case No. 1:24-cv-779

v.                                                    Honorable Hala Y. Jarbou

UNKNOWN SMITH et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Michigan Department of Corrections (MDOC). The Court will also dismiss Plaintiff's official capacity claims and any personal capacity claims for injunctive relief against Defendants Smith, Beehler, Kelly, Ortiz, and Reed. Plaintiff's personal capacity Eighth Amendment claims for damages against Defendants Smith, Beehler, Kelly, Ortiz, and Reed remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the MDOC at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the MDOC itself, as well as the following ICF employees in their official and personal capacities: Captain Unknown Kelly and Correctional Officers Unknown Smith, Unknown Beehler, Unknown Ortiz, and Unknown Reed.

Plaintiff alleges that on May 23, 2024, he engaged in self-harm by cutting the inside of his arm. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that he severed a vein and nicked an artery. (*Id.*) Around 7:15 or 7:30 p.m., Defendant Smith was doing "med pass" with non-party Nurse Lindsay. (*Id.*) Plaintiff showed his arm to Defendant Smith and told him that he needed help because Plaintiff could not stop the bleeding. (*Id.*) Defendant Smith told Plaintiff that "it was just a scratch and would not let the nurse come back." (*Id.*)

Shortly thereafter, Plaintiff "pushed blood under [his] door into the hall so the C/O would see and help [him]." (*Id.*) Around that time, Defendant Kelly was "hearing a ticket across the hall" from Plaintiff. (*Id.*) Plaintiff contends that Defendant Kelly "ignored [his] pleas for help and the blood in the hall even as [Defendant] Beehler came and threw a blanket on the blood to cover it up and shut [Plaintiff's] window flap so no one could see in [Plaintiff's] cell." (*Id.*)

Defendant Reed conducted a round around 8:00 p.m. (*Id.*) Plaintiff told Defendant Reed what he had done and that he could not stop the bleeding. (*Id.*) Between 8:00 p.m. and 8:15 p.m., Defendant Ortiz came and put more blankets down "because more blood was visible on the floor." (*Id.*) At 8:30 p.m., Defendant Reed conducted another round and did not open Plaintiff's window

flap to check on him. (*Id.*) Defendant Ortiz conducted a round at 8:45 p.m. and told Plaintiff to "just kill [himself] and do the world a favor." (*Id.*)

Plaintiff claims that he was finally able to stop the bleeding around 9:15 p.m. (*Id.*) He contends that Defendants Kelly, Smith, Reed, Beehler, and Ortiz left him bleeding in his cell from a self-inflicted wound, despite knowing that Plaintiff has a severe mental illness. (*Id.*) Plaintiff was transferred two days later. (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert Eighth Amendment claims for deliberate indifference to medical needs. Plaintiff asks the Court to investigate the incident. (*Id.*, PageID.4.) He also seeks damages as well as "better mental health treatment." (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Defendant MDOC

As noted *supra*, Plaintiff has named the MDOC itself as a Defendant in this matter. Plaintiff, however, may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v.*

4

*Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Accordingly, Plaintiff's claims against the MDOC will be dismissed.

### B.    Claims Against Defendants Smith, Beehler, Kelly, Ortiz, and Reed

#### 1.    Official Capacity

Plaintiff sues Defendants Smith, Beehler, Kelly, Ortiz, and Reed in their official and personal capacities. However, a suit against an individual in his or her official capacity is equivalent to a suit against the governmental agency; in this case, the MDOC. *See Will*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). For that reason, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Here, Plaintiff seeks injunctive relief and monetary damages. Defendants Smith, Beehler, Kelly, Ortiz, and Reed are, therefore, entitled to immunity with respect to Plaintiff's official capacity claims for damages.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Pennhurst State Sch. & Hosp.,* 465 U.S. at 114 n.25.

Nonetheless, the Supreme Court has cautioned that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). In *Green v. Mansour*, 474 U.S. 64 (1985), the Supreme Court explained why the doctrine of *Ex parte Young* could not be extended to authorize retrospective relief:

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. *See Pennhurst, supra*, 465 U.S. at 102. *See also Milliken v. Bradley*, 433 U.S. 267 (1977). But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

*Id*. at 68.

Here, Plaintiff does not allege the existence of an official policy or practice that Defendants continue to enforce. Nor does he suggest that the actions alleged in the complaint are likely to happen to him again. Instead, Plaintiff's allegations relate solely to past harm, not future risk of harm. Plaintiff, therefore, does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Furthermore, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for injunctive and declaratory relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Here, Plaintiff is no longer confined at ICF, where he avers Defendants are employed. Plaintiff, therefore, cannot maintain his claims for injunctive relief against Defendants, and the Court will dismiss these claims.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims, as well as any personal capacity claims for injunctive relief, against Defendants Smith, Beehler, Kelly, Ortiz, and Reed will be dismissed.

2.      **Personal Capacity**

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims for deliberate indifference to medical needs against Defendants Smith, Beehler, Kelly, Ortiz, and Reed.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 91994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person

7

would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff alleges that for a period of about 2 hours, Defendants Smith, Beehler, Kelly, Ortiz, and Reed ignored his requests for help after Plaintiff cut himself, severing a vein and nicking an artery. Plaintiff suggests that he could not stop the bleeding during that period, and that there was enough blood that he was able to push it out from under his cell door into the hallway. Taking Plaintiff's allegations as true, as the Court must at this stage of proceedings, Plaintiff's personal

capacity Eighth Amendment claims for damages against Defendants Smith, Beehler, Kelly, Ortiz, and Reed may not be dismissed on initial review.

## <u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Defendant MDOC will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's official capacity claims, and any personal capacity claims for injunctive relief, against Defendants Smith, Beehler, Kelly, Ortiz, and Reed. Plaintiff's personal capacity Eighth Amendment claims for damages against Defendants Smith, Beehler, Kelly, Ortiz, and Reed remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 5, 2024                              /s/ Hala Y. Jarbou
                                                     HALA Y. JARBOU
                                                     CHIEF UNITED STATES DISTRICT JUDGE